Ethelbert OVERY, Appellant,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Respondent.

No. 44609.

Supreme Court of Missouri.

Division No. 1.

Oct. 8, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 12, 1956.

Lashly, Neun & Roberts, Paul W. Lashly, Paul S. Brown, St. Louis, for (plaintiff) appellant.

Harry L. Bell, St. Louis, for respondent-defendant, Lloyd E. Boas, St. Louis, of counsel.

VAN OSDOL, Commissioner.

This case is under submission on rehearing. Portions of the former opinion are included here without the use of quotation marks. The action was brought by plaintiff Ethelbert Overy to recover damages for personal injuries alleged to have been sustained as she was crossing a street intersection in the City of St. Louis, Missouri. She asked $35,000 for her injuries. A trial resulted in a jury verdict for the defendant. Plaintiff's motion for new trial

was overruled and from the judgment entered, she appealed.

Plaintiff briefed five points. In the first three, she complains of instructions; in the fourth, she states the court erred in admitting exhibits which were photographs (taken some time after the plaintiff was injured) of the street intersection and a bus purporting to represent the situation as of the time of the occurrence in question. The final point briefed concerns the closing argument of the attorney for the defendant.

The evidence tended to prove the following: Plaintiff was injured at the intersection of Eighth Street and Washington Avenue. Eighth Street is a north-south street, 30 feet in width. Washington Avenue, an east-west street, is 50 feet wide. Plaintiff, on April 18, 1953, alighted from a southbound bus (on Eighth Street) which stopped near the northwest corner of the intersection. Plaintiff intended to cross Eighth Street to the northeast corner of the intersection. Eighth Street at the time was reserved for southbound traffic. The traffic on Washington Avenue moved both east and west. Plaintiff testified that the bus from which she alighted moved south crossing the intersection; that another bus arrived from the north and stopped a few feet north of the crosswalk on Eighth Street; that traffic was then moving east and west on Washington; that she looked at the bus which had stopped on Eighth Street and since she saw people crossing over to the east on the crosswalk, she started to cross and as she walked "just a few feet, three or four feet, something like that" the bus struck her. Plaintiff stated she did see an officer directing traffic at the intersection. She seemed to be confused as to what directions the officer was giving at the time but stated that as she started across the street traffic was moving both directions on Washington Avenue. The traffic officer testified that before the bus in question began crossing Washington, he blew his whistle to stop traffic on Washington and then blew his whistle for traffic to move south on Eighth Street; that as the

bus was moving into the intersection, he heard screams and he noticed people pointing toward the northwest corner of the intersection. There was evidence that the bus, after the occurrence, stopped with the front end 8 to 10 feet north of the south line of Washington Avenue. The bus driver testified that he saw no one in front of the bus or in the crosswalk before he started to cross Washington; that he gave no signal or warning but began moving into the intersection after the officer had directed traffic to move south on Eighth Street; that when the bus was about halfway across the intersection, he heard a commotion and passengers calling that some one had been struck by the bus; that he immediately stopped the bus; that he found plaintiff lying in the street near the curb on the west side of Eighth Street. One witness testified that he was a passenger sitting near the front end of the bus and that he did not see plaintiff or anyone else on the crosswalk as the bus moved south. There was evidence that a "good crowd" of people was in and about the streets and sidewalks but only a few were called as witnesses. Plaintiff was the only witness testifying for herself as to what occurred, and for the defendant, the operator of the bus, one passenger, and the traffic officer testified.

■ Plaintiff complains of Instruction No. 6 given at defendant's request. It reads: "The Court instructs the jury that if you find and believe from the evidence, under all the circumstances shown in the evidence, that the front of defendant's motorbus did not come into contact with the plaintiff, then, in that event, plaintiff cannot recover and your verdict should be in favor of the defendant." Plaintiff says that this instruction "erroneously declared as a matter of law that appellant could not recover if the front of the bus did not strike her."

Defendant says with reference to this instruction that it was not reversibly erroneous because "(A) Plaintiff's own testimony, which was the only evidence on the

point, was that she knew and was sure the front of the bus struck her, and accordingly she was conclusively bound by such, and the jury could not have returned a verdict in her favor unless they found that fact to be true." Rather than summarize plaintiff's evidence on this point, we shall quote it. Note what she claims occurred:

"Q. Now, where did you get off? A. I got off on 8th Street just as you step down a few feet from the curb in that—whatever you call it, the marked off, you know, for pedestrians.

"Q. You mean the pathway there? A. Yes.

"Q. Pedestrian lane. Now, did that bus go on south on 8th Street? A. It did.

"Q. And then what did you do, Mrs. Overy? A. Well, I—you mean the bus that I was on or the one—

"Q. No, ma'am. What did you do? A. Well, when everything was all right, I stepped down from the curb and started across.

"Q. Now—A. The bus was stopped at that time.

"Q. Now, did you look at the bus before you stepped into the street? A. Yes, about five or six feet.

"Q. It was five or six feet in which direction from you? A. North.

"Q. Would that be to your left? A. No—yes, my left.

"Q. And was the bus moving or stopped still at that time? A. It was stopped still at that time.

"Q. All right. Seeing the bus there, what did you do? A. Well, when it was still I started across like all of the other pedestrians.

"Q. And how far across the street did you get? A. Oh, not very far, just a few feet, three or four feet, something like that.

"Q. And then what happened? A. Well, that is what I don't know.

"Q. Well, were you struck by a bus? A. Yes.

"Q. And was that the bus that you had seen stopped there five or six feet from you? A. (Witness nods head.)

"Q. Don't nod your head, Mrs. Overy. You have to say yes or no so that the reporter can hear it. A. Yes.

"Q. Now, did you catch a glimpse of that bus as it struck you? A. No, I—

"Q. Did you see any part of the bus as it struck you? A. I didn't.

"Q. You didn't see any part of the bus. What was the first impression you had, or at the time you were struck? A. Well, I just didn't know, I don't remember.

"Q. Well, which side were you struck on? A. On the—well, you know—by the bus?

"The Court: Which side of her body or what?

"Mr. Lashly: (Q.) Which side of your body? A. The left.

"Q. The left side? A. Yes.

"Q. And where on your left side? A. Well, my hip for one, and my leg in two places was broke.

"Q. You pointed to your left leg there, did you? A. Yes, exactly.

"Q. All right. And what part of the bus hit you? A. The front.

"Q. And was it the front on either side that you—which side of the front? A. Well, I know it was the front of the bus and it struck me on the left side."

On cross-examination, she stated again that it was the front of the bus that struck her. She further testified that she did not see or hear the bus start.

The question before us is, did Instruction No. 6 unduly limit plaintiff's theory of recovery? We are of the opinion that it did. It must not be overlooked that the bus driver and the passenger on the bus who was a witness testified that they saw no one in front of the bus. Plaintiff was found lying near the curb and near the north edge of the space reserved for a crosswalk. That evidence tended to show plaintiff was not struck by the front of the bus. It must also be noted that plaintiff's evidence when she said the front of the bus struck her was a conclusion. She testified that she did not see the bus nor hear it start; that when she last saw the bus, it was standing still.

Plaintiff's case was submitted to a jury on primary and humanitarian negligence, and defendant in its brief herein has not raised the question of the submissibility of plaintiff's case. We shall assume, without deciding, that plaintiff's case was submissible to the jury.

Plaintiff in her petition did not state that she was struck by the front of the bus, nor did plaintiff by her instructions as given by the court submit her case on that theory. It was the duty of the bus driver before starting the bus to look ahead and laterally for persons who might have been crossing the street. He testified his view was unobstructed. He also testified that from the time the bus started it didn't swerve, but in pulling away from the curb, "I naturally pulled out into the street a certain distance." The ultimate issue was whether the bus came into contact with plaintiff through the (causal) negligence of defendant. Under the evidence introduced in this case, the fact, if so, that the front of the bus did not come into contact with plaintiff, although material on the issue of negligence, was not necessarily, or as a matter of law, decisive on the issue. The fact that the front of the bus did or did not come into contact with plaintiff might or might not have been decisive, dependent upon the jury's consideration of the evidence tending to show what part of

the bus struck plaintiff along with other relevant evidence tending to show the facts and circumstances of the casualty. Therefore, Instruction No. 6, in directing a verdict for defendant if the jury believed and found "that the front of the bus did not come into contact with the plaintiff," erroneously restricted plaintiff's theory of recovery by singling out and making conclusive a fact which was but evidentiary.

In a case somewhat similar on the facts, DeVoto v. St. Louis Public Service Co., Mo. App., 238 S.W.2d 66, loc. cit. 71(1, 2) the St. Louis Court of Appeals condemned an instruction almost identical to Instruction No. 6 in this case. See also 88 C.J.S., Trial, § 285 b, p. 785.

 Defendant cited cases in support of its contention that plaintiff was bound by her testimony and unless she was struck by the front of the bus, she cannot recover. In one of the cases cited, Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W. 2d 626, loc. cit. 633, actual discovery of plaintiff's presence was an essential element of plaintiff's case. Plaintiff called as a witness the fireman of the engine which struck him. The fireman testified that he did not see plaintiff. The court held that plaintiff was bound by the fireman's evidence since that was the only evidence on that question of fact. We do not have any such situation in the case under consideration. What portion of the bus struck plaintiff is immaterial except on the question of negligence. We rule that Instruction No. 6 should not have been given and plaintiff is entitled to a new trial.

Plaintiff complains of Instruction No. 7 which was an instruction on contributory negligence. The defendant, no doubt, will redraft the instructions to be submitted to the trial court. So, we need not rule on this question. The same may be said of instructions numbered 12, 13, and 14 which plaintiff says unduly emphasized plaintiff's burden of proof.

The exhibits, the photographs of the street intersection and busses stationed at the bus stop, seem to us to have been proper evidence. If plaintiff is of the opinion that they do not represent the true situation, contradictory evidence may be introduced.

Since the case is to be remanded for new trial, we need not consider the argument of defendant's counsel of which plaintiff complains.

The judgment should be reversed, and the cause remanded.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.